696 So.2d 171 (1997)
STATE of Louisiana, Appellee,
v.
Dwayne ALEXANDER, Defendant-Appellant.
No. 97-169.
Court of Appeal of Louisiana, Third Circuit.
June 4, 1997.
Rehearing Denied September 5, 1997.
*172 Bernard E. Boudreaux, Jr., Dist. Atty., R. Wayne Ussery, for State.
David Charles Willard, Lafayette, for Dwayne Alexander.
Before DOUCET, C.J., DECUIR, J., and BABINEAUX[1], J. Pro Tem.
DOUCET, Chief Judge.
On August 31, 1995, the defendant, Dwayne Alexander, was charged by bill of information with two counts of distribution of cocaine, violations of La.R.S. 40:967(A).[2] Thereafter, on September 5, 1995, the defendant waived formal arraignment and entered pleas of not guilty. Defendant was tried by a jury on March 18th and 19th, 1996, and was found guilty on both counts. The defendant was sentenced on May 24, 1996, to twentyone years at hard labor on each count, to run concurrently. Defendant now appeals his conviction and sentence, alleging two assignments of error.

FACTS:
The defendant sold crack cocaine to an undercover officer on two separate occasions on June 29, 1995.

ERRORS PATENT:
In accordance with La.Code Crim.P. art. 920, this appeal was reviewed for errors patent on the face of the record. No patent errors were found.

ASSIGNMENT OF ERROR NO. 1:
By this assignment, the defendant claims the State presented insufficient evidence to prove he committed the charged offenses, "as reflected by the jury's 10-2 verdict of guilty." In his brief, the defendant claims it was "scientifically impossible that the cocaine produced in State's Exhibits numbers one and two was the substance which came out of defendant-appellant's mouth ... [and] delivered to the undercover officer and confidential informant." The defendant argues the substance removed from his mouth was not the cocaine found in State's one and two since the State's own expert testified that cocaine would dissolve if left in the mouth. The defendant hypothesizes that the confidential informant, present during the transaction, placed a dry piece of crack cocaine into the evidence envelopes which were later analyzed to be cocaine. For the following reasons, we find the evidence was sufficient to prove the cocaine found in State's one and two was the same substance taken from the defendant's mouth on the night in question.
Dwight Wesley, a university police officer at the University of Southwestern Louisiana (USL), testified that he assisted in the undercover transactions at issue. Officer Wesley gave the following account of the first drug transaction:
At approximately early evening, 7:30, approximately, I approached a trailer and pulled to the side of the road. This young man in the black jacket was in front of the trailer. When I stopped the CI yelled to him, as to approach my vehicle. When he came to the vehicle he looked at me and he looked around. I asked him, `What's going on; can you help me, Man?' He said, `Well, what you need?' I said, `What you got?' I showed him a $20.00 bill in my hand and at that time he reached into his mouth, after looking around several more times, and pulled out a hard substance, approximately pea size and shape, believed to be crack cocaine.
The State noted for the record that Officer Wesley pointed to the defendant when he referred to the young man wearing a black jacket. Officer Wesley referred to State's Exhibits 9, 10 and 11 as photographs showing the defendant reaching into his mouth to *173 get the cocaine and handing it to the officer. These photos were still photographs developed from a video of the transaction. The video was recorded by a hidden camera in the back of the vehicle. When showed State's exhibit number one, Officer Wesley identified it as the packet in which he placed the first piece of crack cocaine he received from the defendant.
Officer Wesley further testified that he returned to the same area later that evening and obtained a second rock of cocaine from the defendant. According to Officer Wesley, defendant once again pulled the cocaine out of his mouth. When asked, Officer Wesley testified that he placed the second rock of cocaine in an evidence envelope which he identified as State's Exhibit two.
State's Exhibit four, a videotape of the transactions which took place on June 29, 1995, was admitted into evidence and played for the jury. Although unclear as to which transaction he is describing, Officer Wesley described the scene in the video as the defendant reaching into his mouth, removing a substance and reaching into the vehicle to give it to Officer Wesley. After viewing the video, we find Officer Wesley's description of the transaction to be accurate. The first videotaped transaction shows the defendant's fingers going up to his mouth. At that point, the defendant leaned behind the door panel of the vehicle. Therefore, the video does not show him actually retrieving the tendered substance from his mouth. However, it then shows the defendant reaching into the vehicle to give Officer Wesley something. As for the second transaction, the video is blurry but it does appear that the defendant again reached into his mouth to retrieve the tendered substance.
Finally, Officer Wesley testified he had no doubt that the substance removed from the defendant's mouth was the same substance he placed into the packages labeled State's Exhibits one and two.
On cross-examination, Officer Wesley testified that when he received the substance from the defendant, it was moist from being in defendant's mouth. When asked what affect human saliva would have on the cocaine, Officer Wesley stated, "Generally, through schools, drug schools, crack when held in the mouth will dry out the mouth and people holding crack will get foam on the side of their mouth instead of saliva." According to Officer Wesley, the substance would not dissolve because the crack dries out the mouth. Officer Wesley testified the Defendant appeared to have foam in his mouth for the first transaction.
Defendant relies heavily on the testimony of Ms. Laurette Rapp, a forensic chemist at the crime lab in New Iberia, who testified that if someone placed crack in their mouth and held it there, the crack would dissolve. Ms. Rapp followed by saying, "I mean over a period of time, yes. It would not be immediate."
Detective Todd Dalbor of the St. Martinville Police Department testified that prior to any drug transaction, he searches the confidential informant. Detective Dalbor testified he has the informants "practically undressed [sic] to make sure they don't have any narcotics or anything to that effect with them." When asked if he conducted such a search on the informant used in the present case, Detective Dalbor stated he did. Detective Dalbor did not specifically state whether the search revealed any narcotics. However, he did testify that following the search, he handed the CI neither money nor narcotics.
When taken as a whole, we find the evidence presented to the jury was sufficient for them to find the substance retrieved from the defendant's mouth and sold to the undercover officer on the night in question was the same substance found in State's Exhibits one and two, i.e., crack cocaine. Thus, we conclude this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2:
By this assignment, defendant claims the trial court imposed an excessive sentence in light of various mitigating factors. The trial court sentenced the defendant to twenty-one years at hard labor on each count, the sentences to run concurrently. On June 24, 1996, the defendant filed a Motion to Reconsider Sentence. The motion was denied without hearing on July 1, 1996.
In sentencing the defendant, the trial court stated the following:

*174 BY THE COURT:
All right, gentlemen.
Mr. Alexander, you want to stand, please?
There are several things I take into consideration, Mr. Alexander, in your sentencing. Number One isis that you have not taken responsibility for the crime of which you have been convicted. And I understand that some people assert their innocence. I saw the evidence in this case, and it appeared obvious to me that you were guilty. But you have not accepted that responsibility and you have gone further than that and gotten your family involved in the fact that you continue to protest your innocence despite the conviction that the jury has found in this case.
Also, there seems to be sufficient information and facts that you were and have been involved for some period of time in selling of drugs and, more particularly, crack cocaine; and from someone who you assert was, I think, your girlfriend's baby-sitter, Connie Oppenheimer, who allegedly has asserted that you've been in this business for a considerable number of years.
Also, we know from the testimony at the trial and from the testimony here today that this particular place where you were arrested and where the police officers testified you came out of the trailer is an area that citizens complained about drug activity on a continual basis to such an extent that it became a nuisance, and there were complaints made, as well as the officer's testimony of all of the telephone calls that he received concerning the drugs in that area.
There's also testimony that you were involved since 1991 in selling 15 or 20 rocks of crack cocaine every other day, all of which leads me to believe that you in fact have been involved in trafficking of crack cocaine for a considerable period of time; and, in fact, were so brash that you continued to operate in this city, in this area, despite the fact that people were complaining about the obvious nature of the transactions of drugs in that area, indicating to me that you intend to go about your business and continue doing this despite the fact of complaints, despite the fact of it being obvious of what was going on to probably anybody passing in the area.
As you know, crack cocaine is a drug that's created a lot of problems in our society. A great many of those problems seem to be worse in the African-American community, where it seems to be a blight. And lots and lots of young people seem to be involved in the use of crack cocaine. So there is the problem of your own people suffering as a result of the type of activities that you have been engaged in.
I see no remorse whatsoever in connection with your appearance at the trial, in connection with this sentence, all of which convinces me, of course, that a suspended sentence would be something that would not be beneficial to you or beneficial to this community in any way. I find that there is an undue risk that, during any period of a suspended sentence or probation, that you will continue to commit this type of crime, judging that by your past activity. I find that you're in need of correctional treatment or a custodial environment that can be provided most effectively by your commitment to an institution. I find that a suspended sentence or a small sentence would deprecate the seriousness of the crime and the type of life that you have been living involved with this drug. I find that you have been involved in the distribution of drugs that have involved multiple victims or incidents for which separate sentences have not been imposed. I find that you're persistently involved in similar offenses not already considered as criminal history or as a part of a multiple offender adjudication. This offense involved a controlled, dangerous substance offense. And it seems obvious to me that you have realized substantial income or resources from ongoing drug activities.
All of these reasons are reasons why I feel that aa light sentence, a suspended *175 sentence would be a deprecation of the activities that you have indicated that you have been involved in.
La.Code Crim.P. art. 894.1 lists several aggravating and mitigating factors to aid the trial court in its imposition of sentence. That article requires the trial court to "state for the record the considerations taken into account and the factual basis therefor in imposing sentence." We find the trial court adequately complied with article 894.1 in stating its reasons for the sentences imposed. Testimony was introduced at the sentencing hearing to support the trial court's reasons: 1) the defendant had no remorse for the offenses he committed and continued to protest his innocence; 2) the defendant had been involved in the selling of drugs, although not convicted, since 1991; and 3) the defendant kept company with a convicted drug dealer. Although defendant apparently had no prior convictions,[3] he admitted being arrested for aggravated battery and unauthorized entry into his fiancee's house. He claimed the latter charge had been dropped.
In his brief, the defendant recites generally several mitigating factors which he claims the trial court should have considered. Specifically, he states:
The defendant-appellant would assert that there are several mitigating circumstances that should have been taken into account at his sentencing. There is no indication in the record that the defendant-appellant would commit another crime during a period of probation or a suspended sentence. The defendant-appellant asserts that a lesser sentence would in no way depreciate the seriousness of the crime. The factors that should have been accorded great weight in the court's determination of whether or not to give the defendant-appellant probation or a suspended sentence or a lighter sentence are the defendant-appellant's criminal conduct did not cause or threaten serious harm, the defendant-appellant had no history of prior convictions for delinquency or criminal activity, the character and attitude of the defendant-appellant indicates that he is not likely to commit another crime, the defendant-appellant would respond favorably to probationary treatment, and the imprisonment of the defendant would entail excessive hardship to himself of [sic] his dependents along with the defendant-appellant's young age of twenty-three.
The defendant offers no evidence in support of these alleged mitigating factors. Although the trial court did not state any mitigating factors in imposing the defendant's sentence, defendant presented witnesses on his behalf at the sentencing hearing. Several of the alleged mitigating factors to which defendant refers were actually considered by the trial court and found to be aggravating factors: defendant's lack of remorse, his negative attitude, the harm caused by his continued drug activities, and his history of other criminal activity. Furthermore, it is well settled that "the trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1," but the record must reflect that he adequately considered the guidelines in "particularizing the sentence to the defendant." State v. Smith, 433 So.2d 688, 698 (La.1983).
Additionally, we note the sentences received by the defendant were within the statutory ranges for the offenses he committed. The statutory range for each offense is five to thirty years. Defendant was sentenced to twenty-one years on each count, a sentence in the middle to upper section of the sentencing range. The defendant could have received up to sixty years imprisonment. Furthermore, the sentences were ordered to run concurrently. Thus, the defendant will actually serve a maximum of twenty-one years of the forty-two years imposed by the trial court.
Defendant also insinuates, in his brief, that the trial court erred in not ordering a presentence investigation report (PSI). According to La.Code Crim.P. art. 875(A)(1) and State v. Wimberly, 414 So.2d 666 (La. 1982), the trial court is not required to order a PSI. Thus this alleged error is also without merit.
*176 For the foregoing reasons, we find the sentences imposed on the defendant were not excessive, and that this assignment lacks merit.
Accordingly, for the reasons stated, defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Honorable Allen M. Babineaux, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[2] Another bill of information was filed the same day charging the defendant with only one count of distribution of cocaine. The bill of information charging the defendant with two counts was read to the jury at trial and the defendant was convicted of two counts.
[3] No Presentence Investigation Report was ordered.