PEATROSS, J.
| defendant, Corenza Kendell Kelly, Jr., a juvenile, was charged as an adult, convicted of second degree murder and sentenced to the mandatory term of life imprisonment without parole. Defendant now appeals. For the reasons stated herein, Defendant’s conviction and sentence are affirmed.

FACTS

On January 22, 2007, Defendant, who was 15 years old at the time, went to Goody’s Beauty Supply (“Goody’s”) in Shreveport with the intent to commit an armed robbery. Defendant met two of his juvenile friends in the parking lot of the store, showed them his handgun, an RG .22 caliber revolver, and told them that he intended to rob the store while armed with the handgun.
Defendant then entered the store alone while his friends stood outside.[1] The owner, Ms. Maeung Ram Ellis, and a cashier[2] were inside the store. Shermargueus Bouligny, a friend of Defendant’s, testified that he heard Defendant demand money from the cashier. Defendant, however, was unable to obtain any money from the panicked cashier; and, instead, Ms. Ellis emerged from the back of the store and began to push Defendant toward the door. As Defendant was being pushed by Ms. Ellis, he shot her once in the head. Boul-igny testified that he heard “gunshots,” but did not see Defendant shoot Ms. Ellis. At that point, Defendant and his friends fled from the scene. Ms. Ellis was then transported to the hospital where she died from the gunshot wound.
pLater that day, Defendant’s friends went to the police station and identified Defendant as the shooter. Police then went to Defendant’s home to arrest him. Officer Rod Johnson of the Shreveport Police Department waited in Defendant’s room with him while he was getting dressed. At this time, Defendant told Officer Johnson that there was a gun in a nearby laundry basket. Officer Johnson immediately retrieved the revolver. The gun contained four live cartridges, three of which had a firing pin indentation on the primer.[3] There were no spent cartridge cases in the cylinder and the remaining two chambers were empty.
Defendant’s mother accompanied him to the police station and officers informed Defendant and his mother of Defendant’s Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After conferring in private with his mother, Defendant decided to make a statement to police. Defendant’s mother remained in the interview room and also participated in the interview. Defendant admitted that he intended to go to Goody’s to commit a robbery while armed with a *231 handgun. Defendant explained that the cashier stood at a distance and screamed when he produced the gun and then Ms. Ellis came out from the back and started pushing him out of the store. In the presence of his mother, Defendant made the following statements to police:
That’s how the gun went off. She kept pushing me out of the door. She was pushing me.
[[Image here]]
|aShe was — I was going out the door and she — one of her hands — her hand must have hit the gun, too, while she was pushing me, one or both of them because she was pushing me with both of her hands.... And one of them — one of them must have hit the gun and it had went off and I didn’t even see — I didn’t even see it. I just heard the gunshot. I didn’t even see it when it shot her there. I wasn’t even looking at her when that gun shot.
[[Image here]]
I had just raised it up and it went off.... I was trying to get her to stop pushing me.... Yeah, I was doing it just to scare her. I wasn’t going there just to kill nobody.
Defendant was initially charged as an adult with first degree murder; however, the grand jury returned an amended indictment for second degree murder.
Defendant opted to testify at trial. Again, he admitted that he entered the store with the intent to commit an armed robbery and demanded money at gunpoint from the cashier. Defendant then repeated the substance of his statement to police wherein he explained that Ms. Ellis emerged from the back of the store and was pushing him toward the door when he pointed the gun at her and it “went off.”
During closing argument, Defendant’s attorney reiterated that the shooting was an accident, but also raised the possibility that Defendant might have lost his cool reflection during the period of time immediately preceding the shooting when Ms. Ellis was pushing him toward the door, thereby suggesting that Defendant had committed manslaughter rather than second degree murder.
After the trial ended, the jury deliberated and, as previously stated, returned a verdict convicting Defendant of second degree murder. |4Pefendant filed a post-verdict motion for a modification to manslaughter and the trial judge denied the motion. In accordance with the mandatory penalty for second degree murder as set forth in La. R.S. 14:30.1, the trial judge sentenced Defendant to a term of life imprisonment at hard labor without the benefit of parole. Defendant now appeals.

DISCUSSION

Assignment of Error Number One (verbatim): There is insufficient evidence to prove the guilt of defendant for the offense of second degree murder beyond a reasonable doubt.
In his first assignment of error, Defendant argues that the State failed to prove beyond a reasonable doubt that he committed second degree murder. Defendant further contends that the murder was committed in heat of blood and sudden passion and that those elements were proven at trial by a preponderance of the evidence. According to Defendant, when Ms. Ellis pushed him toward the door, this action was sufficient provocation to cause an average person to lose self-control and cool reflection.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any ra *232 tional trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with |5a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). The reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. Id.
La. R.S. 14:30.1 states in pertinent part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, assault by drive-by shooting, armed robbery, first degree robbery, second degree robbery, simple robbery, cruelty to juveniles, second degree cruelty to juveniles, or terrorism, even though he has no intent to kill or to inflict great bodily harm.

Emphasis added.

Specific intent is the state of mind that exists when the circumstances indicate that the offender actively desired the proscribed criminal consequences to follow his act or failure to act. See La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. See La. R.S. 14:10(1); State v. Draughn, 05-1825 (La.1/17/07), 950 So.2d 583, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007).
|fiThe determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529. In reviewing the correctness of such a determination, the court should review the evidence in the light most favorable to the prosecution and determine if the' evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. Jackson v. Virginia, supra; State v. Huizar, supra. The act of aiming a firearm at a person and discharging the firearm at close range is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997).
La. R.S. 14:31 provides in relevant part:
A. Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce *233 a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed[.]
In State v. Lombard, 486 So.2d 106 (La.1986), the Louisiana Supreme Court explained:
[T]he presence of “sudden passion” or “heat of blood” distinguishes manslaughter from murder. The court has stated on several occasions, however, that “sudden passion” and “heat of blood” are not elements of the offense of manslaughter; 17 rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them. Since they are mitigatory factors, a defendant who establishes by a preponderance of the evidence that he acted in a “sudden passion” or “heat of blood” is entitled to a manslaughter verdict. Where such proof has been introduced, a second degree murder verdict is inappropriate. Citations omitted.
This court, however, further noted in State v. Brooks, 36,855 (La.App.2d Cir.3/5/03), 839 So.2d 1075, writ denied, 03-0974 (La.11/7/03), 857 So.2d 517, that “mere words or gestures, however offensive or insulting, will not reduce homicide from murder to manslaughter.” See also State v. Massey, 535 So.2d 1135 (La.App. 2d Cir.1988).
In the case sub judice, Defendant alleges on appeal that he shot Ms. Ellis in the heat of blood and sudden passion as a result of Ms. Ellis’ provocation by pushing him toward the door. This argument on appeal is contrary to and inconsistent with Defendant’s assertion at trial that the gun in his hand, which he was aiming at Ms. Ellis, accidentally went off while she was pushing him out of the store.
The Jackson standard does not provide a defendant with a means of arguing alternative and inconsistent defenses in different forums, raising one defense before the jury and, when that fails, a second defense presupposing a different set of facts in an appellate court conducting a sufficiency review under Jackson and La. C. Cr. P. art. 821(E). State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291.
Furthermore, the evidence presented at trial and Defendant’s own testimony indicated that Defendant entered Goody’s with a handgun with the intention of committing an armed robbery therein, but was prevented 18from doing so by the cashier’s panic and inability to understand Defendant’s demands, followed by Ms. Ellis emerging from the back of the store and pushing Defendant toward the door. The State’s criminalist testified that Defendant’s firearm was malfunctioning and that three of the four live cartridges in the gun recovered from Defendant had evidence of primer strikes, suggesting that Defendant tried to fire the gun multiple times before finally firing it once at Ms. Ellis. The jury chose to reject Defendant’s brief alternative explanation during closing argument that he was deprived of his cool reflection when he shot Ms. Ellis. Accordingly, we find that the evidence presented at trial was sufficient to prove beyond a reasonable doubt that Defendant was guilty of second degree murder.
This assignment of error is without merit.
Assignment of Error Number Two (verbatim): The sentence imposed is excessive for this offender and offense.
Defendant argues in his second assignment of error that the mandatory sentence of life imprisonment without parole imposed by the trial judge is unconstitutionally excessive, grossly disproportionate to his offense and nothing more than the needless imposition of pain and suffering. Defendant did not file a motion to recon *234 sider sentence with the trial judge, an omission which typically precludes review of a sentence on appeal, except for a bare claim of excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Masters, 37,967 (La.App.2d Cir.12/17/03), 862 So.2d 1121; State v. Duncan, 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164.
The mandatory life sentence without parole for convictions under La. R.S. 14:30.1 has been repeatedly upheld against constitutional challenges. \<} State v. Clem, 33,686 (La.App.2d Cir.11/1/00), 779 So.2d 763, writ denied, 00-3498 (La.10/5/01), 798 So.2d 964. Louisiana statutory law requires the imposition of the mandatory life term, as specified by the legislature, for juveniles who are charged as adults and convicted of homicide. State v. Pilcher, 27,085 (La.App.2d Cir.5/10/95), 655 So.2d 636, writ denied, 95-1481 (La.11/13/95), 662 So.2d 466.
As previously noted, Defendant did not file a motion to reconsider sentence; and, because the sentence imposed was mandatory under La. R.S. 14:30.1, the trial court was not required to articulate reasons for imposing the sentence. State v. Clem, supra. There is no evidence in the record of special circumstances warranting a sentencing deviation in this case. Defendant offers his youthful age in support of his argument, but that factor alone is inadequate to warrant a deviation from the mandatory sentence.
This assignment of error is without merit.

CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant, Corenza Kendell Kelly, Jr., are affirmed.
AFFIRMED.

. There is no surveillance video of the ensuing events.

. The cashier, who is Korean and speaks very little English, did not testify at trial.

. The State's criminalist, Mr. Richard Beigh-ley, testified that, when he test fired the gun with different ammunition, it misfired on four out of six shots, leaving firing pin indentations on the primers of the live, unspent cartridges. Mr. Beighley further explained that the indentations on the primers of the three cartridges found in the gun when it was seized from Defendant were consistent with the same type of indentations resulting from misfires.