419 So.2d 840 (1982)
STATE of Louisiana
v.
Charles Lee ROGERS.
No. 82-K-0056.
Supreme Court of Louisiana.
September 7, 1982.
Rehearing Denied October 15, 1982.
*841 Timothy R. Fischer, Shreveport, Caddo Parish Indigent Defender Office for relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., Sonia Peters, Carey T. Schimpf, James C. McMichael, Jr., Dale G. Cox, Asst. Dist. Attys., for respondent.
DENNIS, Justice.
A writ of certiorari was granted to evaluate the trial court's finding that the defendant, Charles Lee Rogers, has the mental capacity to stand trial for aggravated rape. After the defendant's indictment on March 10, 1981, his defense counsel, by motion, raised the question of defendant's mental capacity to proceed. The trial court ordered a mental examination of the defendant, indicating that the judge had reasonable grounds to doubt the defendant's mental capacity to proceed. La.C.Cr.P. art. 643. Pursuant to this order, the court appointed a sanity commission consisting of two psychiatrists to examine and report on the mental condition of the defendant. Subsequently, at a contradictory hearing on May 20, 1981, the trial court received testimony pertaining to the defendant's mental capacity to proceed from the two psychiatrists, two police officers and an attorney who represented the defendant in a prior criminal case. The two psychiatrists testified that defendant was mentally retarded to the extent that he lacked the mental capacity to proceed. At the close of the contradictory hearing, the trial court ordered transcribed the recording of defendant's plea of guilty to a prior offense of sexual battery. The recording was never transcribed, however, because of the retirement of the court reporter. Following the court's discovery that the transcript would not be available, the judge appointed a third psychiatrist to examine and report on the mental condition of the defendant and ordered a second contradictory hearing.
At the second hearing, which was held on November 23, 1981, the trial court received testimony from the third psychiatrist and additional testimony from one of the psychiatrists it had originally appointed. The third psychiatrist testified that the defendant had the mental capacity to proceed. At the close of the second contradictory hearing, the trial court declared that the defendant had the mental capacity to proceed and ordered that the criminal prosecution should be resumed.
The trial court indicated in its oral reasons that its determination was based entirely on the testimony of the third psychiatrist. Although we agree with the trial court's apparent conclusion that the lay testimony of the police officers and the defense counsel was of little probative value on the question of defendant's mental capacity, we think its ultimate decision was clearly erroneous.
Essentially, the testimony of the police officers indicated that the defendant appeared to them to be coherent during their conversation with him during investigations of the present offense and a prior crime. The defendant's former defense counsel testified that he permitted the defendant to accept a favorable plea bargain offered by the state in the previous case, although he questioned the defendant's ability to understand his rights. However, the defense counsel said he would have raised the question of the defendant's mental capacity to proceed in the absence of a favorable plea bargain. Obviously, the testimony of these *842 lay witnesses, most of which concern a previous case, did not result from objective expert analyses of the defendant's present mental capacity to stand trial for aggravated rape and was not based on tests or interviews designed to gather information pertinent to such an inquiry.
Dr. Norman Mauroner, the third doctor appointed by the court, disagreed with the two psychiatrists originally appointed. He testified that the defendant is mildly mentally retarded, with an I. Q. roughly estimated between 60 and 70, and is mentally able to assist counsel at trial. He answered affirmatively when asked if the defendant could understand the nature of the charges, probably understand the defenses available, understand his legal rights and the possible verdicts, maintain a consistent defense, detect distortions in witnesses' testimony, and decide whether to take the witness stand. He testified that the defendant could "possibly" help locate witnesses, assist "to a degree" in examining witnesses, and understand the consequences of a conviction if it were explained to him, although "he did not appreciate what he might get as a penalty from the charge that he has against him now." However, Dr. Mauroner gave little factual basis for his conclusions. Except for what the doctor called his "interaction" with the defendant during a one-hour interview, his opinion was based on the defendant's ability to recall the phone number and the city block number at his mother's house where he resided, his place of employment, his involvement in an automobile accident in 1970 or 1971, as well as the defendant's statement that he had dropped out of school in the eighth grade. Dr. Mauroner did not determine whether the defendant had been socially promoted in school, and none of the doctors inquired as to whether he could read or write. At the conclusion of this direct testimony, Dr. Mauroner, somewhat equivocally, stated, "I would like to make a correction. I'm only saying that I feel that he could assist his attorney. I'm not saying that he's competent. That's someone else's department." Nevertheless, although he conceded that a psychological test would be the most accurate means of determining the level of defendant's mental retardation, he insisted that a test result showing even severe mental retardation would not cause him to change his opinion that the defendant could assist counsel at trial.
Dr. Joe B. Hayes, one of the original psychiatrists appointed by the court, testified that the defendant is severely mentally retarded with an estimated I. Q. between 50 and 55, and is mentally incapable of effectively participating in a criminal prosecution. Dr. Hayes administered a Kent Emergency Intelligence Test to the defendant and the result indicated that his intelligence level was below that of a three-year-old child. Dr. Hayes also questioned the defendant using a five page judicial commitment check list and another check list recommended by the Academy of Law and Psychiatry. The doctor testified that the defendant could not conceptualize the crime of rape and did not understand that a nonconsensual sexual act is wrong. Also, he stated that the defendant could not understand the defenses of alibi or insanity. He reported that the defendant had extreme difficulty in recalling events and circumstances and concluded that he would not be able to assist in his defense by recalling his whereabouts, locating witnesses or testifying without confusion and contradiction. Dr. Hayes testified that the defendant did not understand the nature of the charge against him, the penalty which could be imposed, the difference in the verdicts which could be rendered and did not completely grasp his legal rights. After observing the defendant in the courtroom, Dr. Hayes, who testified at both contradictory hearings, noted that the defendant had never looked up, showed extreme motor retardation, and did not appear to listen more than one tenth of the time, confirming the doctor's opinion that the defendant is seriously intellectually deprived. The doctor stated that if he were asked for a diagnosis of the defendant's condition he would think that he had an organic brain syndrome which resulted in his mental retardation to a degree that the doctor was surprised he had not been institutionalized at an earlier age.
*843 Dr. Lucretia Little, the other psychiatrist originally appointed by the trial court, was of the opinion that the defendant is moderately mentally retarded with an I. Q. of less than 50 and found that he lacked the mental capacity to stand trial for aggravated rape. She stated that she asked him indirect questions to estimate his judgment and intelligence and found that he was lacking in many areas. The defendant reported to her that he has periods of time up to an hour and a half when he does not know what happened. He scored below the lowest recordable grade on a Kent E.I.T. test given to him by Dr. Little. When asked to compare her findings with those of Dr. Hayes, Dr. Little said she thought the defendant had a mental capacity greater than a three year old child in some areas, but apparently she agreed that his intelligence was lower in others. Dr. Little concluded that the defendant could not recall facts to assist in his defense, maintain a consistent defense, make critical decisions during trial or testify effectively in his defense.
A person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing and conducting his defense, may not be subjected to a trial. Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); La.C.Cr.P. art. 641; State v. Bennett, 345 So.2d 1129 (La. 1977). The failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).
Our statutory scheme for detecting mental incapacity to proceed jealously guards a defendant's right to a fair trial. La.C.Cr.P. arts. 641-649.1. When mental disease or retardation is so severe as to impair a defendant's capacity to understand the object, nature and consequences of the proceedings against him, to consult with counsel in a meaningful way, and to assist effectively in his defense, that defendant is, within the contemplation of our law, incompetent to stand trial. State v. Bennett, supra. Because of the presumption of sanity in our law, the defense carries the burden of proving by a preponderance of the evidence that he lacks the capacity to understand the proceedings against him or to assist in his defense. Ibid. Accordingly, if the evidence shows that it is more probable than not that the defendant lacks the mental capacity to proceed, the criminal prosecution must be suspended. La.C.Cr.P. art. 648.
Due process and our statutory law require that the issue of the defendant's mental capacity to proceed shall be determined by the court. La.C.Cr.P. arts. 647, 648. This cardinal principle permits the court to receive the aid of expert medical testimony but prohibits it from committing the ultimate decision of competency to a physician or anyone else. State v. Bennett, supra. As a corollary, the court may not base its decision solely upon an expert's conclusion which has no rational basis in the facts contained in the record of the contradictory hearing. Otherwise, the legal question of mental capacity to proceed in the particular criminal prosecution would be judged by a medical rather than a judicial authority.
Applying these precepts to the evidence, we conclude that the trial court's decision was clearly erroneous. The trial court completely disregarded the testimony of Drs. Hayes and Little and based its decision entirely upon the opinion of Dr. Mauroner, although there is no rational factual basis in the record for preferring the opinion of the latter. Dr. Mauroner conceded that the defendant is mentally retarded and that a psychological test could accurately gauge the level of his intelligence. Yet he relied on little other than his own intuitive interaction with the defendant and declared that no amount of testing would change his opinion that the accused could assist counsel in an aggravated rape prosecution. Even a very young child can perform intellectual feats such as those of the defendant that Dr. Mauroner found significant, e.g., remembering *844 his home phone number and the block in which he lived. The doctor may have been justified in making a medical diagnosis on the basis of this sketchy information and his intuitive "interaction" with the patient. But the absence of a factual basis in the record for Dr. Mauroner's opinion renders his testimony clearly insufficient, in view of the substantial contrary evidence, to warrant a judicial determination of mental capacity to proceed.
Our review of the evidence convinces us that the defense proved by more than a clear preponderance of the evidence that the defendant presently lacks the mental capacity to proceed. Both Dr. Hayes and Dr. Little concluded that the defendant is seriously, perhaps severely, mentally retarded to the extent that he cannot effectively participate in his defense. Furthermore, their conclusions were based on psychological tests, observations, and interview questions which they fully described in their testimony. Acceptance of Dr. Mauroner's inadequately supported conclusion in the face of contrary medical opinion having a substantial factual basis was tantamount to turning the court's judicial function over to the doctor. This dereliction by the trial court constituted a failure to observe procedures adequate to protect the defendant's right not to be tried or convicted while incompetent to stand trial.
For the reasons assigned, we find the trial court erred in its determination that the defendant has the mental capacity to proceed. Accordingly, the matter is remanded to the trial court for further proceedings not inconsistent with this opinion.
MARCUS and LEMMON, JJ., dissent and assign reasons.
MARCUS, Justice (dissenting).
I am unable to say that the trial judge's finding, based on the testimony of one of three psychiatrists, that defendant has the mental capacity to stand trial for aggravated rape was clearly erroneous. Accordingly, I respectfully dissent.
LEMMON, Justice, dissenting.
The trial judge accepted the testimony of Dr. Mauroner over the testimony of Dr. Hayes and Dr. Little because "Dr. Mauroner was much more practical, asked much more practical questions that one might readily know". I too was impressed by the practical approach taken by Dr. Mauroner.
All experts agreed that the primary problem was defendant's mental deprivation. Dr. Mauroner attempted to determine defendant's mental capacity to proceed by asking him simple questions relating to everyday life and evaluating his answer, while the other doctors' questions relating to geography, history and government, although encompassing matters of common knowledge, did not as accurately measure the mental ability of a retarded person.
On the basis of the record of the several hearings, I cannot say that the trial judge's finding on capacity to proceed was clearly erroneous.