663 So.2d 470 (1995)
STATE of Louisiana, Appellee,
v.
James Arthur CARNEY, Appellant.
No. 25,518-KA.
Court of Appeal of Louisiana, Second Circuit.
October 13, 1995.
*471 Louis G. Scott, Hunter, Scott, Blue & Johnson, Monroe, for appellant.
Richard Ieyoub, Attorney General, Baton Rouge, Jerry L. Jones, District Attorney, Monroe, Stephen T. Sylvester, Asst. District Attorney, Monroe, for appellee.
Before NORRIS, LINDSAY, BROWN, WILLIAMS and STEWART, JJ.
WILLIAMS, Judge.
The defendant, James Arthur Carney, was convicted after a jury trial of the second degree murder of his ten-week-old daughter, a violation of LSA-R.S. 14:30.1. He was sentenced to serve a mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence. After he was granted an out-of-time appeal, we reversed and remanded for further proceedings. On rehearing, we conditionally vacated our first opinion and remanded the case for an evidentiary hearing on the issue of whether the pre-trial motion for the appointment of a sanity commission was properly disposed of. The defendant now appeals the trial court's adverse ruling on this issue. For the following reasons, we affirm our original opinion, reverse the defendant's conviction, vacate his sentence and remand for further proceedings.

FACTS
In October 1982, several detectives from the Monroe Police Department investigated a case of possible child abuse involving the defendant's ten-week-old daughter, Lisa Marie Carney. The child was in Saint Francis Medical Center's pediatric intensive care unit, suffering from multiple injuries. When the detectives arrived, Evelyn Ramsey from the Division of Family Services advised them that the defendant had admitted abusing his child by dropping her on the floor, throwing her on the bed and slapping her in the face.
Initially, on November 10, 1982, the district attorney charged the defendant by bill of information (docket No. 41,089) for the attempted second degree murder of his child. However, on November 30, 1982, after the child died, a grand jury indicted the defendant for second degree murder (docket No. 41,136). Subsequently, on December 9, 1982, *472 the district attorney dismissed the prosecution under docket No. 41,089.
On December 7, 1982, before the prosecution under docket No. 41,089 was dismissed, defense counsel filed a motion to appoint a sanity commission. In that motion, counsel alleged that the defendant appeared to be hallucinating, could not assist counsel during interviews, and did not have the mental capacity to understand the proceedings against him or assist in his defense. Counsel further said in that motion that the defendant had been indicted for second degree murder. However, he mistakenly filed the motion under docket No. 41,089, the prosecution involving the charge for attempted second degree murder.
On January 5, 1983, the trial court held a pre-trial hearing in the case. During that hearing, defense counsel became aware of the change in the docket number. He then orally informed the trial court that it needed to resolve the issue of the defendant's sanity in the current prosecution under the new docket number. The district attorney requested a hearing on the motion to appoint a sanity commission. Subsequently, the trial court fixed January 20, 1983, as the date on which it would hold a hearing to determine whether to appoint a sanity commission.
On January 20, 1983, the trial court commenced a hearing to determine whether to appoint a sanity commission. The defendant was not present. At that time, defense counsel stated that he was withdrawing the motion to appoint a sanity commission. The trial court accepted the withdrawal. The defendant proceeded to trial and was convicted as charged.
Approximately ten years later, the defendant perfected this out-of-time appeal. His new counsel alleged that the trial court erred because it did not properly resolve the sanity issue before trial. On December 1, 1993, we reversed the defendant's conviction and vacated his sentence based on our finding that the appeal record did not reflect that the issue of the defendant's mental capacity to proceed had been resolved before he proceeded to trial, a violation of LSA-C.Cr.P. Art. 642. We then remanded the case for further proceedings.
Subsequently, the state filed an application for rehearing. It asserted that this court based its decision to reverse the defendant's conviction on an incomplete record of the proceedings below. The state specifically argued that the defendant had withdrawn his motion for a sanity hearing during the January 20, 1983 pre-trial hearing. On February 1, 1994, we granted the rehearing and, after finding that the transcript of the referred to proceeding was not included in the record, we conditionally vacated our prior decision and remanded the case to the district court with instructions to conduct an evidentiary hearing to determine whether the defendant had validly withdrawn his request for a sanity commission. State v. Carney, 630 So.2d 278 (La.App. 2d Cir.1993).
As directed, the trial court conducted an evidentiary hearing on March 9, 1994. Subsequently, the trial court ruled that the defendant had validly withdrawn the motion to appoint a sanity commission. The defendant appeals.

DISCUSSION
Our statutory scheme for detecting mental incapacity "jealously guards a defendant's right to a fair trial." State v. Nomey, 613 So.2d 157, 161 (La.1993); State v. Rogers, 419 So.2d 840 (La.1982); LSA-C.Cr.P. Arts. 641 et seq. Prosecuting a defendant who lacks the mental capacity to understand the nature and object of the proceedings against him or to assist in his defense violates his right to due process. Nomey, supra. Similarly, failing to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial. Nomey, supra, citing Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Rogers, supra.
A defendant's mental capacity to proceed may be raised at any time. Once raised, no further steps in the prosecution, except the institution of prosecution, shall be taken until the defendant is found to have the mental capacity to proceed. LSA-C.Cr.P. *473 Art. 642; Nomey, supra. When the trial court has a reasonable ground to doubt the defendant's mental capacity to proceed, it must order a mental examination of the defendant. LSA-C.Cr.P. Art. 643.
"Due process and our statutory law require that the issue of the defendant's mental capacity to proceed shall be determined by the court." Rogers, supra at 843. "This cardinal principle ... prohibits [the court] from committing the ultimate decision of competency to a physician or anyone else." Id. Furthermore, the above articles, when read in pari materia, implicitly require the trial court to rule on the defendant's motion and determine whether a "reasonable ground to doubt the defendant's mental capacity" exists before proceeding further in the prosecution. Withdrawing a motion to appoint a sanity commission is a further step in the prosecution. Also, permitting such a motion to be withdrawn takes the ultimate decision of competency away from the court. Thus, although a mental examination may not be required in every case where the issue of mental capacity is raised, State v. Wilkerson, 403 So.2d 652 (La.1981); State v. Folse, 623 So.2d 59 (La.App. 1st Cir.1993), the record must reflect that the trial court made a determination of whether or not reasonable grounds exist to doubt the defendant's capacity to proceed.
On rehearing, the state argues that the defendant never raised the issue of his mental capacity to proceed in the prosecution for second degree murder under docket number 41,136. LSA-C.Cr.P. Art. 642 does not state how a defendant's mental capacity to proceed must be raised; and, because our statutory scheme for detecting mental capacity "jealously guards a defendant's right to a fair trial," State v. Nomey, supra, citing State v. Rogers, supra, this provision should be liberally construed.
The record indicates that the district attorney dismissed the bill of information and obtained a new docket number when he filed the grand jury indictment. Subsequently, defense counsel orally informed the court that a motion for the appointment of a sanity commission was pending. The district attorney requested a hearing on the motion to appoint a sanity commission, and the trial court fixed a hearing date. Thus, the defendant sufficiently raised the issue of his mental capacity to proceed after the indictment was filed.
After the defendant raised the issue, the trial court allowed further steps in the prosecution to occur without making a determination of the defendant's mental capacity to proceed to trial. When defense counsel withdrew the motion to appoint a sanity commission, the defendant was not present and the trial court did not observe or question him about his mental capacity. At the very least, the record should reflect that the trial court should have personally observed the defendant and questioned him as to his understanding of the proceedings to determine if a "reasonable ground" existed to doubt his mental capacity. Further, as noted by the United States Supreme Court, it is contradictory to argue that a defendant may be mentally incompetent, and yet he may knowingly or intelligently waive his right to have the court determine his mental capacity to stand trial. Pate, supra at 383-84, 86 S.Ct. at 841, State v. Harris, 406 So.2d 128 (La.1981).
Once a motion to appoint a sanity commission has been made, it takes on a life of its own as nothing further can happen without resolving the issue of the defendant's mental capacity. An attorney independently waiving or withdrawing the motion is an insufficient resolution of the issue. The trial court, not the defense attorney, is mandated to determine the defendant's mental capacity to proceed and rule on the motion. LSA-C.Cr.P. Arts. 642 and 643.

CONCLUSION
As stated by Justice Blackmun, "the Due Process Clause does not simply forbid the State from trying and convicting a person who is incompetent. It also demands adequate anticipatory, protective procedures to minimize the risk that an incompetent person will be convicted." Medina v. California, 505 U.S. 437, 458, 112 S.Ct. 2572, 2584, 120 L.Ed.2d 353 (1992) (Blackmun, J. Dissenting) (emphasis in original); Nomey, supra. To *474 uphold this defendant's conviction would deprive him of the protective measures set forth in our criminal code and, thus, deprive him of his due process rights. See Nomey, supra. In reversing this conviction, we stress the importance of "jealously guarding" the defendant's right not to be tried if mentally incompetent to proceed. Nomey, supra. Therefore, we reinstate our original opinion and reverse the defendant's conviction, vacate his sentence, and remand the case for further proceedings.
REVERSED, VACATED, AND REMANDED.
BROWN, J., dissents with written reasons.
BROWN, Judge, dissenting.
As stated by Justice Frankfurter, "Preoccupation by our people with the constitutionality, instead of with the wisdom, of legislation or of executive action is preoccupation with a false value." Dennis v. United States, 341 U.S. 494, 584, 71 S.Ct. 857, 904, 95 L.Ed. 1137 (1951) (Frankfurter concurring). I respectfully believe that the majority has not fully focused on the facts surrounding defendant's decision not to pursue the question of his competency to stand trial. Rather, the majority is preoccupied with what the trial court said or did not say.
On October 27, 1982, defendant, who was then 34 years of age, severely beat his 10-week-old daughter. Defendant was initially charged by bill of information with attempted second degree murder. The child stayed in a coma for fifteen days before dying on November 10, 1982. The pathologist's report stated that the child died from complications "due to severe inflicted trauma to the head.... Clinical history indicated repeated trauma to the child involving thorax and left hip." A grand jury indicted defendant for second degree murder. He was tried, found guilty and later sentenced to a mandatory life term.[1]
Defendant, in proper person, filed motions following his sentencing that included a request for an out-of-time appeal and appointment of counsel. New counsel was appointed and following an evidentiary hearing on February 23, 1984, at which defendant cognitively testified, the motion for an out-of-time appeal was denied. Seven years later in an application for Post-Conviction Relief (PCR), defendant alleged that his conviction should be overturned because of ineffective representation and denial of the right to appeal. The trial court denied the PCR application. In April 1992, this court granted defendant an out-of-time appeal. Defendant's conviction was initially reversed; however, on rehearing this matter was remanded to the trial court for taking evidence on the issue of whether defendant filed and/or waived a motion to appoint a sanity commission. Following an evidentiary hearing, the trial court ruled against defendant. This court again reversed defendant's conviction.
Defendant was initially charged with attempted second degree murder and, in connection with this charge, his attorney filed several motions, including a request to appoint a sanity commission. Thereafter, defendant was indicted for second degree murder. At a hearing to dispose of the motion to appoint a sanity commission on January 20, 1982, defense counsel, Clyde Lain, stated that the motion filed on the previous attempted murder charge would not be used in the murder case and explained that "we decided that it would not be in the best interest of justice for a sanity commission." Attorney Lain further stated that "there was an indictment filed, and we did not apply for a sanity commission at that point. So in reality we have not applied for one, so there is nothing really before the court."
At the evidentiary hearing ordered by this court to determine whether the competency issue was waived, only defendant's trial attorney, Clyde Lain, testified. He indicated that *475 the motion to appoint a sanity commission in the attempted murder case was filed as a cautionary measure. After the child's death and defendant's indictment for murder, defense counsel had discussions with defendant on strategy. According to Attorney Lain:
Somewhere down the line we decided we were not going to file a new motion for sanity commission, that we would pursue the trial of second degree murder. We abandoned the motion in other words.
Defense counsel's notes or diary, which was filed as an exhibit, states the following:
1-11-83 prep. of motion for a speedy trial.
1-18-83 conf. with J.D. [meant J.C. for defendant] (ass't. D.A.) about sanity commission and agreed that we will not apply for same but is to appear in court on 1-20-93 at 9:00 #4 (emphasis added).
1-20-83 appeared in courtroom #4 and decided that would not have hearing on sanity commission.
In explanation of the decision not to pursue the issue of competency to stand trial, Attorney Lain testified that it was defendant's desire to proceed to trial as quickly as possible. A speedy trial motion was filed and defendant, who appeared mentally competent to Attorney Lain, did not want the delay that would result from the appointment of a sanity commission. Specifically, defense counsel stated:
Oh, yeah, I definitely did because it was his (defendant's) idea to go to trial as soon as possible. For whatever reason, I don't recall, but I would not have filed a speedy trial motion unless my client requested one.
Concerning defendant's sanity and ability to assist in his defense, Attorney Lain testified:
... Because see, he gave me some names of people he wanted to be subpoenaed to come to court to testify for him and also, he gave me information on how to contact his wife who was residing in Bastrop, and he told me how to get in touch with her, and I tried to get in touch with her and I did whatever he wanted me to do to assist him ... well, he ... I think that ... well, in my opinion he assisted me to the best of his ability while he ... under the circumstances he was in jail.
Without contradiction, defense counsel testified to his belief that defendant was able to assist in his defense, that he understood right from wrong and that after discourse with his attorney, he chose to file a motion for speedy trial and not to seek a sanity commission. At the hearing for an out-of-time appeal (February 23, 1984), defendant testified, as did Attorney Lain. Defendant contradicted and contested Lain's testimony; however, at the hearing on remand, concerning waiver of the competency question, defendant did not contest Lain's factual account or opinion. In fact, no information has ever been presented to bring into question defendant's competency to stand trial.
Under these circumstances I respectfully disagree and dissent from the majority opinion.
NOTES
[1] Because the issue involved in this appeal concerns competency to stand trial, it is important to note that defendant initially gave an exculpatory history to doctors when the baby was taken to the hospital; however, defendant later admitted to a social worker that he had dropped, thrown and slapped the child. On the following day, October 28, defendant gave a recorded statement to police officers, clearly answering questions of age, address, education, present orientation and understanding of his Miranda rights. He confessed to the officers that he was alone with the baby and that he "hurt her bad."