809 So.2d 1002 (2001)
STATE of Louisiana
v.
Gary MATHEWS and Christopher John Gage
No. 2000 KA 2115.
Court of Appeal of Louisiana, First Circuit.
September 28, 2001.
*1005 Ellen Daigle Doskey, Assistant District Attorney, Houma, Counsel for State of LouisianaAppellee.
Katherine Franks, Louisiana Appellate Project, Covington, Counsel for Defendant AppellantChristopher John Gage.
*1006 Gwendolyn K. Brown, Louisiana Appellate Project, Counsel for DefendantAppellant Gary Mathews.
Before: FITZSIMMONS, WEIMER, and DOWNING, JJ.
FITZSIMMONS, J.
The defendant, Christopher John Gage, was charged by grand jury indictment with three counts of second-degree murder and one count of attempted second-degree murder, in violation of La. R.S. 14:30.1 A(1) and La. R.S. 14:27. He pled not guilty to all counts, and after trial by jury, was found guilty of second-degree murder as charged on count two. He was found guilty of manslaughter, in violation of La. R.S. 14:31 A(1), on counts one and three and of attempted manslaughter on count four. He was sentenced to 40 years imprisonment at hard labor for the count one manslaughter conviction and to 40 years imprisonment at hard labor for the count three manslaughter conviction. For the second-degree murder conviction, he was sentenced to life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence, and for the attempted manslaughter conviction, he was sentenced to 20 years imprisonment at hard labor.
The defendant, Gary Mathews, was charged by grand jury indictment with three counts of second-degree murder and one count of attempted second-degree murder, in violation of La. R.S. 14:30.1 A (1) and La. R.S. 14:27. He pled not guilty to all counts, and after trial by jury with co-defendant, Gage, was found guilty as charged of count two, second-degree murder, and not guilty on the remaining three counts. He was sentenced to life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence.
The defendant, Leonard Paul Pharagood, was charged by grand jury indictment with three counts of second-degree murder and one count of attempted second-degree murder.[1] He pled not guilty to all counts, and after trial by jury with the aforementioned co-defendants, was acquitted of all charges.
The defendant, Gage, now appeals, urging seven assignments of error, as follows:
1) The trial judge erred in allowing the case to proceed to trial after a sanity commission had been invoked to determine Gage's competency to stand trial without a hearing as to competency ever being held.
2) The trial judge erred in allowing Gage's counsel to change Gage's not guilty by reason of insanity plea before the issue of competency could be determined.
3) It was a jurisdictional error fatal to the proceedings to allow Gage to be amended into the indictment charging Mathews and Pharagood. The district attorney illegally consolidated the charges against Gage for trial by amending the indictment against other persons to include him.
4) The trial court erred in not granting a severance since Gage, but for the unlawful actions of the prosecutor, was entitled to a separate trial.
5) The trial judge erred in not granting a mistrial based upon the state's failure to disclose the victims' and witnesses' drug usage on the date of the shootings, as well as the sales *1007 of crack cocaine which had occurred on the date of the shootings, all in response to a request for Brady information. The lack of information impeded the development of the defense.
6) The trial court erred in sustaining the state's objection to the defense counsel's questioning of the state's witnesses regarding their illegal drug use habits.
7) The evidence is insufficient to justify a verdict of second-degree murder on count two. The evidence warrants a reduction of the verdict to manslaughter.
The defendant, Mathews, now appeals, urging five assignments of error, as follows:
1) There exists a jurisdictional error, fatal to the proceedings, because of the amendment to the indictment charging Mathews and Pharagood, which amendment added Christopher Gage.
2) The trial court erred in denying Mathews' motion for severance.
3) The trial court erred in sustaining the state's objection to the defense's questioning of the state's witnesses regarding their drug habits, which testimony was sought to impeach the witnesses' testimony about the minimal drug usage to which they admitted, and to assail their memory and/or ability to recall the events of December 15, 1997.
4) The evidence is insufficient to support the conviction.
5) The trial court erred in denying the motion for post-verdict judgment of acquittal.

STATEMENT OF FACTS
On December 15, 1997, several people had gathered at Bennie Carter's trailer, located in Terrebonne Parish. Marida Arcement, who lived in the trailer with Carter, was present, along with her sister, Lela Arcement. Other visitors were Evelyn Robertson, Gregory Robinson and his girlfriend, Magdalene Johnson.
Defendant Mathews visited the trailer at least twice that evening. Each time, he purchased one rock of cocaine from Marida Arcement and Bennie Carter, but left shortly thereafter.
At approximately 8:00 p.m., there was a knock at the trailer door, and one of the callers stated that his name was "John". Bennie Carter and Marida Arcement were in the bedroom. Marida, and possibly Carter, answered the door. Defendants, Gage, Mathews, and Pharagood, entered the trailer. Lela Arcement was seated in a chair near the door through which they entered. Evelyn Robertson, Gregory Robinson and Magdalene Johnson were seated at the kitchen table.
Upon entering the trailer, Gage approached Gregory Robinson and said, "Hey man, where my sh_t at?" Robinson responded, "Man, I got your sh_t; let's go on the outside."At that point, Gage shot Robinson several times in the stomach and in the face. Gage then pointed the gun at Lela Arcement and shot her several times in the stomach and in the face. The defendant, Mathews, stood blocking the trailer door throughout this time.
Evelyn Robertson, Marida Arcement, Bennie Carter and Magdalene Johnson retreated towards the rear bedroom. Bennie Carter exited the trailer through the bedroom window, followed by Magdalene Johnson. Evelyn Robertson and Marida Arcement heard several more shots outside of the trailer. They heard someone outside say, "... they still have somebody left in the house," and then, "... let's go, forget about it." Officers found Lela Arcement in the chair, bleeding profusely, Gregory Robinson lying in the doorway, and Magdalene Johnson leaning against *1008 the fence with gunshots to her face and stomach. Bennie Carter was found the next morning, lying about 82 feet from the trailer.
Autopsies of the three murder victims revealed that Bennie Carter, Magdalene Johnson, and Gregory Robinson died of multiple gunshot wounds. Lela Arcement underwent several surgeries and survived four gunshot wounds. According to the Louisiana State Police Crime Lab, the wounds were caused by at least two different guns that had been fired.

INSUFFICIENCY OF THE EVIDENCE (GAGE'S ASSIGNMENT OF ERROR NO. 7 AND MATHEWS' ASSIGNMENTS OF ERROR NOS. 4 AND 5)
The defendant, Gage, asserts that his second-degree murder conviction for the murder of Gregory Robinson should be reduced to manslaughter. He urges that the murder was committed during a heated argument over illegal drugs. Consequently, he was provoked sufficiently to be deprived of self-control.
The defendant, Mathews, asserts that there was insufficient evidence of his participation to convict him as a principal to the murder of Gregory Robinson. In the alternative, he also argues that the conviction should be reduced to manslaughter.
La. R.S. 14:30.1 defines second-degree murder, in pertinent part, as follows:
A.... the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm....
La. R.S. 14:31 defines manslaughter, in pertinent part, as:
A. (1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his selfcontrol and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed....
The reviewing court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-theevidence evaluation under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and does not extend to credibility determinations made by the trier of fact. As trier of fact, the jury is free to accept or reject, in whole or in part, the testimony of any witness. State v. Pooler, 96-1794, p. 56 (La.App. 1 Cir. 5/9/97), 696 So.2d 22, 58, writ denied, 97-1470 (La.11/14/97), 703 So.2d 1288.
Specific criminal intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Fisher, 95-0430, pp. 2-3 (La.App. 1 Cir. 5/10/96), 673 So.2d 721, 723, writ denied, 96-1412 (La.11/1/96), 681 So.2d 1259.
The specific intent of Gage was not an issue in this case because he shot the victim three times at close range. Thus, having found the elements of second-degree murder, the jury had to determine whether or not the circumstances indicated that the crime was actually manslaughter.
The existence of "sudden passion" and "heat of blood" under La. R.S. 14:31(A)(1) are not elements of the offense but, rather, are factors in the nature of *1009 mitigating circumstances to be proven by the defendant which may reduce the grade of homicide. See State v. Crochet, 96-1666, pp. 9-10 (La.App. 1 Cir. 5/9/97), 693 So.2d 1300, 1307, writ denied, 97-1547 (La.11/21/97), 703 So.2d 1305. Provocation is a question of fact to be determined by the trier of fact. State v. Crochet, 96-1666 at p. 10, 693 So.2d at 1307. Thus, the issue remaining is whether or not any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigating factors were not established by a preponderance of the evidence. State v. Crochet, 96-1666 at p. 10, 693 So.2d at 1307.
The defendants point to Evelyn Robertson's testimony that Gregory Robinson was a dangerous person. The defendants contend that Robinson and Gage were arguing over a stash of drugs and that the provocation of the argument, along with the dangerous character of these two combatants, resulted in the death of Gregory Robinson. As support for their theory, they point out that the other verdicts of manslaughter in this case reflect the belief of the jury that the shootings were committed in a "battle fever" brought on by Gage's fight with Gregory Robinson.
According to the testimony of Evelyn Robertson, Lela Arcement and Marida Arcement, Gage was in the trailer only a few minutes before firing the first shot. None of the three surviving witnesses supported the defendants' assertions that Gage had been provoked in any way. Lela Arcement was the closest person to Gage as she remained in the chair near the door throughout the shootings. She testified that when Gage walked into the trailer, he demanded to see Robinson. He approached Robinson with a gun drawn and asked, "Hey man, Where my sh_t at?" Robinson responded, "Man I got your sh_t, let's go on the outside." At that point, Gage shot Robinson at point-blank range at least twice. There was no evidence that Robinson was armed or that he was the aggressor in this encounter.
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of the three eyewitnesses, which testimony was uncontroverted at trial. We have carefully reviewed the record and find that the evidence supports the jury's determination. We are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution, could have concluded that the state proved beyond a reasonable doubt that the defendant, Gage, was guilty of second-degree murder, and that the mitigating factors were not established by a preponderance of the evidence. Accordingly, Gage's assignment of error number seven is without merit.

Mathews as Principal to the Murders
The defendant, Mathews, asserts that the state failed to carry its burden of proving that he was a principal to the second-degree murder of Gregory Robinson. He argues that the evidence does not prove that he had a weapon upon entering the trailer, and he contends that Gage's shooting of Robinson came as a surprise to him.
La. R.S. 14:24 provides that "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act ..., aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." However, a person may only be convicted of the crime as a principal if the state proves that he personally had the requisite mental state. State v. Brooks, 505 So.2d 714, 717 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). Thus, in order to support a conviction as a principal to second-degree murder, the state must show that Mathews had the specific intent *1010 to kill or inflict great bodily harm and that he assisted Gage in the commission of this offense.
When circumstantial evidence is used to show specific intent, La. R.S. 15:438 should be considered as it provides a rule regarding the use of such evidence. The rule directs the fact finder, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove, and then to convict only if every reasonable hypothesis of innocence is excluded. State v. Meyers, 95-750, 96-35, 96-395 p. 8 (La. App. 5 Cir. 11/26/96), 683 So.2d 1378, 1383, writs denied, 97-0015 (La.5/9/97), 693 So.2d 766; 98-2530 (La.2/5/99), 737 So.2d 745; and XXXX-XXXX (La.12/8/00), 775 So.2d 1079. The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of the correctness of this determination is to be guided by the Jackson standard.
The state compares the instant case to State v. Meyers, 95-750, 683 So.2d at 1378. In Meyers, the Fifth Circuit affirmed the convictions of the driver and a passenger of a car in which a third co-defendant in the car fired shots, killing the victim. Neither co-defendant tried to assist the victim after the shooting or attempted to report the shooting. Although the co-defendants were not armed and there was no direct evidence presented showing that they were aware that the third defendant was armed, the court found that the jury believed that all three men knew exactly what their purpose was in confronting the victim on the street that night. The Meyers court stated:
This was a drive-by shooting quite common in the lives of drug dealers and the participants here all knew that [the shooter] intended to shoot [the victim]. They were definitely not an innocent driver and passenger in the car.
State v. Meyers, 95-750 at pp. 10-11, 683 So.2d at 1384.
In the instant case, no witness heard Mathews make any statement of shock, surprise or horror. He stood by the door of the trailer and made no attempt to stop the shootings or to leave. Lela Arcement testified that Mathews blocked the door such that no one could leave the trailer. The other two eyewitnesses did not contradict that testimony. Lela further testified that as Gage approached her and began shooting, Mathews continued to stand by the door, watching the shootings.
Wilford Anderson, who lived near the trailer, testified that he heard several gunshots and then saw three men running along the fence line, away from the trailer, and then get into a gray Cadillac with gold-colored hubcaps. Later in the evening, Mathews was found driving a car of this description. According to an occupant in the car, they were on their way to a car wash. Mathews made no attempt to report the shootings.
The jury could have reasonably concluded that Mathews aided and abetted Gage by visiting the trailer, checking out the scene prior to the three men entering the trailer, and by standing in front of the door during the shooting of Robinson and Lela Arcement, thus preventing anyone from leaving the trailer. Mathews failed to offer any reasonable hypothesis of innocence other than that he was surprised by Gage's actions. The jury apparently rejected this hypothesis.
Pursuant to a thorough review of the record, we find that a rational trier of fact, viewing all of the evidence as favorable to the prosecution, could have concluded that the state proved beyond a reasonable doubt that Mathews had the specific intent to commit second-degree murder and that he aided and abetted Gage in achieving this end. Accordingly, these assignments of error are without merit.

*1011 GAGE'S ASSIGNMENTS OF ERROR NOS. 5 AND 6; MATHEWS' ASSIGNMENT OF ERROR NO. 3

The defendants contend that the trial court erred in not granting a mistrial based upon the state's failure to disclose, in response to a request for Brady information,[2] the victims and witnesses' use of illegal drugs on the date of the shootings, as well as the sales of crack cocaine which had occurred at the trailer. The defendants further contend that the trial judge erred in sustaining the state's objection to the defense's questioning of the eyewitnesses regarding their drug habits. The defendants assert that they were denied their constitutional right of confrontation of these witnesses in that they were denied the opportunity to demonstrate that drug usage had impaired their ability to recall accurately the events of December 15, 1997. Further, they were allegedly denied the opportunity to demonstrate that the witnesses lacked credibility in that they had been engaging in illegal activity.
The statement of each of the three eyewitnesses, that they and the victims had been using crack cocaine on the day of the murders, was not communicated by the state to defense counsels until just prior to jury selection. The state admits that this information is Brady material. However, the state argues that the defendants had adequate notice of this information such that they were not deprived of a fair trial. The state further contends that it was not aware that its witnesses admitted using crack cocaine on the day of the shootings until immediately before trial, during its preparation of the witnesses. It did not appear in the police reports, and the investigating officers testified that they did not question the witnesses about their drug use on the day of the shootings.
The state asserts that it informed all the defendants of this fact as soon as possible, and the defense attorneys admitted that they had been told this fact before the trial began. The defense immediately filed a motion for funds for an expert witness on the effect of cocaine upon witness and victim perception and response during the incident charged. This motion was granted by the trial court on the same day, and an expert was retained.
La.Code Crim. P. art. 729.5 prescribes sanctions for failure to honor a discovery right, leaving in the trial judge's discretion the decision of whether to order a mistrial or enter any such other order as may be appropriate. The prosecutor may not suppress evidence which is favorable to the accused and material to either guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Favorable evidence includes both exculpatory evidence and evidence impeaching the testimony of a witness when the reliability or credibility of that witness may be determinative of the defendant's guilt or innocence, or when it may have a direct bearing on the sentencing determination of the jury. United States v. Bagley, 473 U.S. 667, 675-6, 105 S.Ct. 3375, 3379-80, 87 L.Ed.2d 481 (1985); Giglio v. United States, 405 U.S. 150, 153-4, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972).
The issue in the instant matter is timeliness of the state's disclosure rather than the failure to disclose Brady material. Disclosure of favorable evidence by the state must be made at such a time as to allow the defense to use the material effectively in the presentation of its case. State v. Prudholm, 446 So.2d 729, 738 (La.1984). Not all cases involving late disclosure of favorable evidence result in reversible error. The reviewing court must *1012 determine if the late disclosure so prejudiced the defendant that he was denied his constitutional right to a fair trial. State v. Smith, 430 So.2d 31, 42 (La.1983).
In this case, the trial judge denied the defendants' motions for mistrial because the court found that there had been adequate cross-examination of the witnesses by the defense counsels concerning their drug use. The trial judge "must be given a wide measure of discretion in determining whether a tardy disclosure [of exculpatory material] jeopardizes effective utilization of the evidence and what remedy, if any, should be granted." State v. Prudholm, 446 So.2d at 738.
We agree that the defendants' cases were not prejudiced by the state's tardy disclosure. At trial, the defendants' attorneys questioned all the eyewitnesses about their drug use on the day of the shootings, and the witnesses freely admitted using drugs. Furthermore, as admitted by the defense attorneys, the defendants had suspected drugs were being used in the trailer prior to the shootings. All of the victims were found to have elevated crack cocaine levels in their systems. The body of one victim, Magdalene Johnson, was found with a crack pipe in her hand. Lela Arcement, the lone surviving victim, even had elevated levels of crack cocaine when she returned several months later for reconstructive surgery. The defense attorneys had access to all of the medical records and the autopsy reports and were aware that all victims had used cocaine on the day of the shootings.
The defendants also assert that the trial court erred in sustaining the state's objection to questions of the eyewitnesses regarding their prior drug use. While the state did not object to questions regarding drug use on the day of the crimes, it argued that since there had been no expert testimony of the cumulative effect of the long-term use of crack cocaine, testimony of prior drug use would be immaterial.
Later in the trial, the defendants introduced the testimony of Dr. Sarah Deland, a forensic expert on substance abuse and its effect on people. She testified that prolonged use of cocaine can lead to memory problems. Thereafter, the defendants did not attempt to recall the witnesses and question them about their habitual use of cocaine. After a review of the record and particular facts of this case, we cannot say that the trial court erred. See La.Code Crim. P. art. 841.
Additionally, we find that the court's limitation of the defendants in this manner did not cause prejudice to their cases. Each of the three defense counsels thoroughly cross-examined each of the witnesses, admitted drug users, calling into question their recollection of the events leading up to the murders and pointing out every inconsistency. The jury, in finding the witnesses' accounts of the shootings to be ultimately credible, was well-informed about the weaknesses of the witnesses' testimony. Accordingly, these assignments of error lack merit.

GAGE'S ASSIGNMENTS OF ERROR NOS. 3 AND 4; MATHEWS' ASSIGNMENTS OF ERROR NOS. 1 AND 2
The defendants contend that the state improperly amended the grand jury indictment charging Mathews and Pharagood to add charges against Gage as well. They urge that they should not have been joined as co-defendants for trial. Additionally, Mathews asserts that he should not have been tried with Gage because their defenses were antagonistic.
The state contends that because Gage was on the run, it was unable to indict him along with his co-defendants, Mathews and Pharagood, on the same grand jury indictment. *1013 Gage was not arrested until eight months after the murders and charged by grand jury indictment with three counts of first-degree murder and one count of attempted first-degree murder. Previously, Mathews and Pharagood had similarly been charged by grand jury indictment with three counts of first-degree murder and one count of attempted first-degree murder.
On September 27, 1999, three and onehalf months before trial, the state amended the indictment against Mathews and Pharagood to three counts of second-degree murder and one count of attempted second-degree murder and added Gage to this indictment. Gage did not object to this amendment at the time. The previous indictment against him was nol-prossed.
The defendants assert that amending the indictment to include Gage on the same indictment without presenting this amendment to the grand jury, constitutes a jurisdictional defect fatal to the indictment, which can be urged at any time in these proceedings. The defendants argue that this is analogous to the state bringing the charges by bill of information, citing State v. Donahue, 355 So.2d 247 (La.1978). They urge that since second-degree murder charges can only be instituted by a grand jury, the amended indictment cannot support a valid conviction for seconddegree murder against Gage.
The State counters that Gage was properly charged by grand jury indictment. Thus, the amendment merely served to consolidate the three defendants into a single indictment.
State v. Donahue is not dispositive of this issue. In Donahue, a charge of second-degree murder was improperly brought by bill of information after a grand jury indictment had been nolprossed. Here, the defendants were properly indicted. It is not error for the state to reduce the charged offenses from first degree to second-degree by amendment of an indictment. See State v. Young, 615 So.2d 948, 951 (La.App. 1st Cir.1993).
However, we do not find that separately indicted defendants can be properly joined on one of the indictments by merely adding all the defendants to that one indictment. Code of Criminal Procedure article 706 prohibits the consolidation of separate indictments for trial without the consent of the affected defendants. Designating the act of consolidating as one of amending does not remove the joinder from the strictures of article 706. Although the comments to article 706 explain that the prosecution may avoid obtaining the consent of all of the defendants by charging them in a single bill of indictment, the single bill can not be a subsequent bill that resulted from the mere consolidation of two prior separate bills of indictment. See La.Code Crim. P. art. 706, Official Revision Comment b.
However, the defendants did not timely object to the improper joinder or consolidation. "[O]bjections of misjoinder of defendants or misjoinder of offenses may be urged only by a motion to quash the indictment." La.Code Crim. P. art. 495. Absent a contemporaneous objection, the right to raise the issue was waived. La. Code Crim. P. art. 841; see State v. Peters, 298 So.2d 276, 280 (La.1973) (on rehearing). "The defects are not jurisdictional nor do they constitute a denial of due process." Peters, 298 So.2d at 280.

Mathews' Motion to Sever Based Upon Antagonistic Defenses
Mathews filed a motion to sever on October 13, 1999, and Gage filed a motion to sever the day before trial. Both motions were heard and denied before jury selection began. Only Mathews now asserts on appeal that a severance should have been *1014 granted on the grounds of antagonistic defenses.
La.Code Crim. P. art. 704 provides:
Jointly indicted defendants shall be tried jointly unless:
(1) The state elects to try them separately; or
(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.
Defendants who are jointly indicted are to be tried together unless the court finds that justice requires a severance. The courts have permitted a severance to co-defendants whose defenses are antagonistic to each other. Defenses are antagonistic when each defendant intends to exculpate himself by putting the blame for the offense on a co-defendant. However, a mere allegation that the defenses are antagonistic is insufficient because convincing evidence of actual antagonism must be present to justify a severance. An accused is not entitled to a severance as a matter of right; the decision is one resting within the sound discretion of the trial judge. A denial of a motion to sever will not be overturned on appeal absent a clear abuse of discretion. Reversal of a conviction for failure to sever where antagonism is shown is not always mandated unless prejudice can be shown. State v. Price, 93-0625, 93-0626, p. 3-4 (La.App. 1 Cir. 3/11/94), 636 So.2d 933, 936-37, writs denied, 94-1566 (La.10/14/94), 643 So.2d 159 and 94-0742 (La.6/17/94), 638 So.2d 1091.
Mathews points out that there is no evidence which proves that he was carrying a gun at the time of the shootings and argues that, had he been tried separately, he could have presented a defense which, in an unfettered fashion, placed the blame for the killings upon Gage. We see no merit to this argument. Mathews, in fact, did present the defense at trial that he did not have a weapon and that he did not participate in the shootings. Notwithstanding his defense, the jury found him guilty. The jury could have reasonably found that he was a principal to the crime for aiding and abetting in the shootings. Thus, after a thorough review of the record, and specifically the hearing on the motion to sever, we see no clear abuse of discretion by the trial court in denying the motion. Mathews failed to present any convincing evidence of actual antagonism. Accordingly, these assignments of error are without merit.

GAGE'S ASSIGNMENTS OF ERROR NOS. 1 AND 2
Gage asserts that the trial court erred in allowing the case to proceed to trial after a sanity commission had been invoked, because a hearing as to his competency was never held. He further urges that the trial judge erred in allowing his counsel to withdraw, by written motion, Gage's plea of "not guilty by reason of insanity" and allowing Gage to enter a simple "not guilty" plea, without first holding a hearing to determine his competence.
Gage initially pled "not guilty and not guilty by reason of insanity" under docket numbers 316,719 and 316,720 on October 1, 1998, in the court of Judge Edward Gaidry, Division A. On October 20, 1998, Gage, through his appointed counsel, filed a "Motion for Psychiatric Examination" in both cases. This motion requested that the defendant be examined by psychiatrists to determine his competence to stand trial and his mental capacity to commit the crime on December 15, 1997. The following day, Judge Gaidry signed an order appointing two doctors to examine Gage. This order was signed only for docket number 316,720, the indictment which charged Gage with attempted first-degree murder. The order in docket number 316,719, the indictment which charged *1015 Gage with three counts of first-degree murder, was never signed by the trial judge.
On March 15, 1999, all of the cases involving these murders were re-allotted to Judge John Walker, Division B. On June 2, 1999, a new attorney for Gage filed a motion to withdraw the insanity plea. In his motion to withdraw the insanity plea, Gage's counsel stated:
The defense has obtained sufficient examination of your mover at this time by qualified medical expert to believe that the burden of proof of an insanity defense cannot be maintained at trial and hence the motion to withdraw same is proper.
Judge Walker signed the motion, and allowed Gage to withdraw his plea of not guilty by reason of insanity. The motion was filed only in docket number 316,719 (three counts of first-degree murder), where a sanity commission had not been appointed. The motion was not filed in docket number 316,720 (one count of attempted first-degree murder).
Gage was re-arraigned on the amended indictment on September 27, 1999. At the arraignment hearing, Gage pled not guilty to all charges. His attorney and the trial judge discussed his previous insanity plea. Gage's new counsel told the court that the motion for psychiatric examination was never signed by Judge Gaidry and explained to the court that Judge Gaidry did not sign the motion, along with several other pre-trial motions, pending the outcome of a sanity hearing. Thereafter, Judge Walker stated:
It is also my understanding that with respect to Mr. Gage, there was an original sanity plea which was subsequently withdrawn. I don't know why Judge Gaidry didn't sign motions. I suspect that he didn't sign any motions while there was a pending sanity plea because it interrupted proceedings, and that may have been his reason why. I don't know, and so I'm not sure about that.
At this same hearing, Gage was re-arraigned under docket number 303,250 with three counts of second-degree murder and one count of attempted second-degree murder. He did not object to the rearraignment nor did he request any further psychiatric examinations.
On appeal, Gage now urges that all proceedings occurring after Judge Gaidry signed the one order to appoint a sanity commission should be nullified. In the alternative, he urges that he is entitled to an evidentiary hearing to determine his competency.
The defendant cites State v. Carney, 25-518 (La.App.2d Cir.10/13/95), 663 So.2d 470, and State v. Guidry, 449 So.2d 41 (La.App. 1st Cir.1984). He asserts that although the ordering of a sanity commission to inquire into his capacity to proceed rests in the sound discretion of the trial court, once the commission is ordered, "it takes on a life of its own...." Carney, 25-518 at p. 5, 663 So.2d at 473. Nothing further can happen without resolving the issue of his mental capacity, including the changing of a plea. Carney, 25-518 at p. 5, 663 So.2d at 473.
The state cites State v. Barnett, 96-2050 (La.App. 1 Cir. 9/23/97), 700 So.2d 1005, and State v. Gowan, 96-0488 (La.3/29/96), 670 So.2d 1222, in support of its position that the defendant has implicitly waived his right to a sanity commission. In these cases, the trial judge had not made the threshold determination that a sanity commission should be appointed before the defendant changed his plea of insanity.
Louisiana Code Crim. P. art. 650 provides that a sanity commission is not required every time a defendant pleads "not guilty and not guilty by reason of insanity". Rather, it is left to the sound *1016 discretion of the trial judge to determine if there is reasonable ground to doubt the defendant's capacity to proceed. "When the question of the defendant's mental incapacity to proceed is raised, ... no further steps in the criminal prosecution, except the institution of prosecution," may be brought "until the defendant is found to have the mental capacity to proceed." La. Code Crim. P. art. 642. However, a defendant can waive his right to have a motion for a sanity commission heard or decided by failing to pursue the right before entering a plea of not guilty. See State v. Gowan, 96-0488 at p. 1, 670 So.2d at 1222; State v. Barnett, 96-2050 at pp. 15-16, 700 So.2d at 1014-15.
Judge Gaidry made a determination that a sanity commission should be appointed. Apparently, the signed "Motion for Psychiatric Examination" was overlooked by the state, the trial court, and Gage's new attorney. However, after the motion was signed and the sanity commission ordered, no further steps in the prosecution of Gage should have been taken until the issue of defendant's competency had been decided. See La.Code Crim. P. art. 642, et seq.; State v. Nomey, 613 So.2d 157 (La.1993).
The failure to resolve the issue of a defendant's capacity to proceed may result in nullification of the conviction and sentence. Nomey, 613 So.2d at 161-62. However, an exception to immediate nullification has been recognized by the Louisiana Supreme Court. See State v. Snyder, 98-1078, pp. 29-31 (La.4/14/99), 750 So.2d 832, 854-55; Nomey, 613 So.2d at 161 & n. 8-162. A nunc pro tunc hearing on the issue of competency is appropriate "if a meaningful inquiry into the defendant's competency can still be had." Snyder, 98-1078 at p. 29, 750 So.2d at 854. "The trial court is in the best position to determine whether it can make a retrospective determination of defendant's competency during his trial and sentencing." Snyder, 98-1078 at pp. 30-31, 750 So.2d at 855. "The state bears the burden to show the court that the tools of rational decision are available." Snyder, 98-1078 at p. 31, 750 So.2d at 855. Whether a meaningful retroactive competency hearing can be held must be decided on a case by case basis, with Snyder, Nomey, and the cases cited within, as guidance. Snyder, 98-1078 at p. 31, 750 So.2d at 855.
Therefore, we conditionally affirm the convictions and sentences of defendant Gage, and remand to the trial court for the purpose of determining whether a nunc pro tunc competency hearing may be possible. If the trial court believes that it is still possible to determine the defendant's competency at the time of the trial on the charges, the trial court is directed to hold an evidentiary hearing. If the defendant was competent, no new trial is required. If the defendant is found to have been incompetent at the time of trial, or if the inquiry into competency is found to be impossible, defendant Gage is entitled to a new trial. Snyder, 98-1078 at pp. 31-32 & 43, 750 So.2d at 855-56 & 863. Defendant's right to appeal is reserved. Snyder, 98-1078 at p. 43, 750 So.2d at 863.

Proof of Incapacity at Trial
Gage's counsel contends that the trial transcript reflects inappropriate behavior by Gage during the trial which indicates that he may not have appreciated the severity of the proceedings. We note that the record is completely silent as to any evidence of Gage's alleged incapacity to proceed. His attorney did not raise the issue once the case was transferred to Judge Walker's court, and never expressed any concern in this regard throughout several pre-trial hearings and the entire trial. The one incident referred to by Gage's appellate counsel involved Gage making gestures to a witness, including the gesture *1017 of pointing a gun. The record reflects that the state expressed concern at trial that Gage was attempting to intimidate the witness. This incident suggests a knowledge of the proceedings and the possible consequences of a conviction. Alone, it is insufficient to prove or suggest mental incapacity.
Accordingly, as to defendant Gage, this matter is remanded to the trial court for further proceedings. The conviction and sentences of Mathews are affirmed.
CONVICTION AND SENTENCE OF DEFENDANT MATHEWS AFFIRMED; CONVICTIONS AND SENTENCES OF DEFENDANT GAGE CONDITIONALLY AFFIRMED, AND CASE REMANDED FOR FURTHER PROCEEDINGS.
WEIMER, J., dissents and assigns by reasons.
WEIMER, J., dissents in part.
I respectfully dissent in part regarding the remand of the case of Christopher Gage. In all other respects, I agree with the majority and would affirm.
Following indictments for three counts of first degree murder and one count of attempted first degree murder, numerous motions were filed on behalf of Gage. Among the motions were requests for a sanity commission. Without hearing, the trial judge granted the motion filed under the indictment charging attempted first degree murder. No additional steps were taken to have the sanity examination commenced.[1]
More than seven months later, on June 2, 1999, the record indicates a motion to withdraw the insanity plea was filed and granted, albeit under the indictment which contained an unsigned request for a sanity commission. On September 7, 1999, Gage appeared before the court at which time the indictments were amended, and he was charged with three counts of second degree murder and one count of attempted second degree murder. At that time he entered a plea of not guilty to all charges. On September 27, 1999, he again appeared before the court at which time all charges for all defendants were included under one docket number. Gage was re-arraigned at that time on the charges and again pled not guilty to all counts.
NOTES
[1] All three defendants were originally indicted for three counts of first degree murder and one count of attempted first degree murder. The various indictments were amended to the lesser charge of three counts of second-degree murder and one count of attempted seconddegree murder. The defendants did not object to the lesser charge amendments, nor do the appellants assign error to the lesser charge amendments.
[2] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[1] The record reflects that motions requesting psychiatric examination of Gage were filed on October 20, 1998, under separate indictments for first degree murder and attempted first degree murder. The order appointing two doctors to examine Gage was signed the following day under the docket number referencing only the attempted first degree murder indictment.