732 So.2d 612 (1999)
STATE of Louisiana, Appellee,
v.
Laderrick D. DAVIS, Appellant.
No. 31,711-KA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1999.
*613 Richard C. Goorley, Shreveport, Wilson Rambo, Counsel for Appellant.
Richard P. Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Catherine Estopinal, Assistant District Attorney, Counsel for Appellee.
Before WILLIAMS, CARAWAY and DREW, JJ.
WILLIAMS, J.
The defendant, Laderrick D. Davis, was indicted by a Caddo Parish grand jury for second degree murder, a violation of LSA-R.S. 14:30.1. After a jury trial, the defendant was found guilty as charged. He was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant appeals his conviction and sentence. For the following reasons, we affirm.

FACTS
On October 2, 1996, at approximately 1:00 a.m., the victim, Thomas Sanders, was found dead lying face down in a parking lot at 1420 Youree Drive, Shreveport, Louisiana. Sanders had died as a result of a single .380 caliber gunshot wound that entered his back and exited his chest.
Law enforcement officers were notified that on the night of the murder, a security supervisor at the Stone Vista Apartments had seen the defendant, Laderrick Davis a/k/a Derrick; Desmond Antwine a/k/a Daz; Henry Pouncy a/k/a Mookie; and Antonio Jordan a/k/a Scoobie, running into the housing project within minutes after hearing a gunshot. The defendant was subsequently arrested and charged with the murder of Sanders.
At trial, the evidence included the testimony of many witnesses, including Desmond Antwine. Desmond Antwine testified as follows: On October 2, 1996, at approximately midnight, Antwine, Jordan, Pouncy and the defendant were walking through the Highland area when they were approached by another male, Billy Ray Williams, who was riding a bicycle. Williams informed the four males that there was a "lick" walking up Jordan. Antwine explained to the jury that a lick is an individual who could be robbed. According to Antwine, the defendant began running and the other three followed him. Antwine testified that the defendant stopped the victim, and, after a brief conversation, shot him in the back. All four males, including the defendant, then ran to the Stone Vista Apartments. Antwine stated that the defendant had a chrome.380 automatic handgun. He also stated that no one else in the group was armed.
*614 The state's next witness, Henry "Mookie" Pouncy, though clearly at the scene, was able to state only that he heard a shot, but that he "did not see nothing." He could not tell the jurors who shot whom, only that after hearing the shot, he ran with the other three members of the group, which included defendant. According to Pouncy, he spent the next day with the defendant and defendant acted like "he got his stripe," which, according to Pouncy, meant that "he (defendant) either did something or was with someone who committed a crime."
The state ended its eyewitness portion of the testimony with the third member of the foursome that was present at the commission of the crime. Antonio Jordan, a sixteen-year-old, was approximately 30 feet from the shooting and was able to see the entire matter through the bushes where he had hidden. After the single shot was fired, Jordan ran with the group to a stop sign. He testified "We was like man what happened, what happened. And that's when Derrick said man he shot the dude, like that there. I said you shot him. I was going to run up there and look at the dude body. I took off running, man, I got scared."
Dr. George McCormick, III, testified that the cause of death was a single gunshot wound to the back. Jennifer Ware, a resident of the Stone Vista Apartments, testified under re-direct examination, that "Derrick killed somebody." Billy Ray Williams, a self-admitted dope dealer, admitted to knowing and seeing the defendant and his friends in the neighborhood of the murder, talking to them and seeing defendant and Daz "walk on up the street, Jordan Street," just a few minutes before hearing a single gunshot.
The state concluded its case with the testimony of Detective Carolyn Eaves who testified that she interviewed the defendant on or about October 6, 1996, and after properly reading him his Miranda rights, took a recorded statement from him. The statement was played to the jury at the end of the state's portion of the trial. In his taped statement, the defendant denied being at the scene at the time of the murder. He repeatedly stated that he was at the Stoner Hill Apartments and he did not leave the apartments.
At trial, the defendant took the stand on his own behalf. He admitted that he was at or very near the scene of the crime, but he told the jury he was smoking a cigarette and looking in the other direction when Antwine approached the victim and said "[l]et me holler at you a minute." The defendant testified, "I was just sitting there smoking the cigarette by the____ right there by the edge of the gate and that's when I heard a gunshot." He further stated that he dropped his cigarette, ran, and did not know about the death of the victim until he saw it on television the next morning. On cross-examination, the defendant explained that when he heard the gunshot, he "[t]hought it was some dudes that we had got into it with a week earlier. We had got into it with some dudes from Wilkerson Terrace. We had got into a fight and they had come around on Herndon one time and almost shot my homeboy little sister, and so I thought it probably was them riding around cause they ride around that neighborhood."

Assignment of Error Nos. 1 and 4:

Sufficiency of the Evidence
By assignment of error number one, the defendant contends the evidence was insufficient to convict him of second degree murder. By assignment of error number four, he contends the trial court erred in denying his motion for a new trial based on the sufficiency of the evidence to convict.[1] When issues are raised on *615 appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347.
As stated above, in criminal appeals, we review the evidence in the light that most favorably supports the jury verdict. In that light we determine whether the evidence, direct and circumstantial, is sufficient to allow a rational juror to conclude beyond a reasonable doubt that the State proved every element of the crime of which the accused was convicted. LSA-R.S. 15:271, 15:438; Jackson v. Virginia, supra; State v. Jacobs, 504 So.2d 817 (La. 1987).
The standard of review for the sufficiency of circumstantial evidence to convict is not a stricter standard than for the sufficiency of direct evidence to convict, but is simply a method that directs the trier of fact and the reviewing court to question, objectively, or to focus on, the reasonableness of the asserted or arguable hypotheses of innocence. If the trier of fact or the reviewing court finds the asserted or arguable hypotheses of innocence unreasonable, circumstantial evidence is sufficient to convict beyond a reasonable doubt. LSA-R.S. 15:271, 15:438; State v. Jacobs, supra; State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-Const. art. 5, § 5(C); State v. McCray, 621 So.2d 94 (La.App. 2d Cir.1993). It is the function of the jury to assess credibility and resolve conflicting testimony. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the jury, is sufficient support for the requisite factual conclusion. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
In the instant case, to convict of second degree murder, the State was required to prove the defendant killed Thomas either when defendant had the specific intent to kill or to inflict great bodily harm or when he was engaged in the perpetration or attempted perpetration of an armed robbery, even though he did not have the intent to kill or inflict great bodily harm. LSA-R.S. 14:30.1.
On this record, we conclude the evidence, direct and circumstantial, was legally sufficient to convict the defendant of second degree murder beyond a reasonable doubt. Based on the eyewitness testimony, the jury could have concluded beyond a reasonable doubt that the defendant shot the victim while attempting to rob him, and immediately fled the scene. This assignment of error lacks merit.

Assignment of Error Nos. 2 and 3:

Excessive Sentence
By these assignments, the defendant contends the trial court erred in imposing the mandatory sentence of life imprisonment without the benefit of parole, probation or suspension of sentence. Defendant argues that mitigating circumstances exist in this case since Antwine was actually the shooter and it was not established that defendant shared Antwine's intentions when they approached the victim.
The jury has already rejected this argument. We also reject this argument on *616 appeal. The penalty for second degree murder is life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:30.1. The Louisiana Supreme Court has consistently held that a mandatory sentence of life imprisonment for second degree murder does not constitute cruel and unusual punishment. State v. Landry, 388 So.2d 699 (La.1980), cert. denied, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981); State v. Daniel, 378 So.2d 1361 (La.1979); State v. Graham, 422 So.2d 123 (La.1982), appeal dismissed, 461 U.S. 950, 103 S.Ct. 2419, 77 L.Ed.2d 1309 (1983); State v. Harper, 27,278 (La.App.2d Cir.8/23/95), 660 So.2d 537.
Further, the supreme court has stated:
There is no injustice in punishing one of two guilty principals when the jury has possibly miscarried justice by acquitting the other guilty principal on the basis of mistake, compromise, lenity or nullification. At most, there is only the illusory appearance of injustice which is nothing more than intellectual discomfort with an imperfect system of criminal justice.
State v. Irvine, 535 So.2d 365, 369 (La. 1988); State v. Harper, supra.
These assignments lack merit.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Although the defendant assigned as error the trial court's denial of his motion for a new trial, he did not brief this assignment. Assignments of error which are not briefed or argued are considered abandoned. State v. Lewis, 416 So.2d 921 (La.1982); Rule 2, Section 12.4, Uniform Rules of the Courts of Appeal.