STEWART, J.
hThe defendant, Timmie Davis, was convicted of second degree murder and was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The trial court also denied eligibility for good time. For the reasons that follow, we affirm his conviction and sentence.
FACTS
On February 17, 2003, Monroe police officers responded to a report of shots being fired and found the body of Yolanda Jefferson slumped over the steering wheel of a vehicle resting against a porch. The front-left window of the vehicle was shattered and there was a gunshot wound to her head. The appellant came from the backyard with his hands in the air and blood on his right arm. He was handcuffed, advised of his rights, and asked where the weapon was. He replied that the officers should not worry about that but should instead get an ambulance for the victim.
The investigation revealed that right before the shooting the victim’s neighbor, Lameesha Jefferson, overheard the victim and Davis arguing. She looked out her *766 window and saw the victim sitting in the vehicle and Davis tapping on the driver’s side window. When Davis tried to get into the vehicle, the neighbor saw the victim lock the doors before he could reach the passenger side door. The neighbor walked away from her window and heard the victim scream, “Timmie, Timmie, no.” The neighbor then heard a loud noise and looked out her window again. She testified that she saw Davis shoot the victim with a silver handgun. She said the car then rolled forward. Lameesha then ran outside and asked Davis what he had done. He Infold her to call 911. She said that Davis went into her house, and she stayed and watched as the victim took her last breath. Ballistics tests showed that the weapon found in the victim’s backyard was the one used in the shooting.
The appellant was charged via indictment with second degree murder and found guilty as charged in a 10-2 jury verdict. He was sentenced to life imprisonment and filed a timely motion for appeal.
DISCUSSION

Sufficiency of Evidence

Davis argues that the distance between the shooter and the victim when the shot was fired, the trajectory of the bullet, and the spent shell being ejected into the vehicle, support his statement that the gun accidentally discharged when he fell or leaned into the vehicle’s window. He further asserts that his actions immediately following the shooting are inconsistent with those of a person with murderous intentions.
The state argues that evidence of Davis’ prior beatings and threats to kill the victim prove his intent. Also, the neighbor’s observation of him standing nearby with a handgun after the shooting is sufficient to prove an intentional shooting took place.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virqinia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of *767 the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
|,tA reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, 2002-3090 (La.11/14/03), 858 So.2d 422.
The testimony of Lameesha Jefferson that she saw Davis shoot the victim is critical to the state’s case. At trial, La-meesha demonstrated where Davis was standing, and she stated she saw him “point, point and shoot.” On cross-examination, she stated that she could see what land of gun “he was holding up, as he was shooting it, as he was firing it.” Lamee-sha also testified that prior to the shooting she heard the victim and Davis arguing, as he was trying to get into the vehicle with the victim. On cross examination, she also stated that what she thought was the first shot she heard may have been the breaking of a window. The coroner testified that the victim was shot on the left side of the head right above the ear. He further opined that the evidence shows the victim was shot at a range of under two feet. The coroner’s testimony also shows that the bullet traveled through the victim’s head in a horizontal line. Although the defense counsel argued to the jury that this trajectory would not be possible if Davis was standing outside the vehicle and the victim was seated, the eyewitness demonstrated how Davis was holding the gun when she saw him shoot the victim. The jury obviously rejected his version of the events giving rise to the shooting at issue. We find no error in that determination.
Davis also argues that since the shell casing was found on the rear floorboard of the victim’s vehicle, the physical evidence is consistent with |Rthe shot occurring as he fell or leaned into the victim’s car. We find that the location of the shell easing cannot result in a reversal of the defendant’s conviction. There was no testimony to show the path of the gun in the split second after the bullet was released. It is equally plausible that Davis could have been falling and continued moving toward the victim after the gun accidentally discharged as it is that he could have intentionally fired the shot and continued moving inward toward the car. Another possible theory is that the casing could have ricocheted off Jefferson’s body and into the vehicle. The eyewitness testified Davis was about three feet from the victim, and the coroner stated the gun was fired from about a two-foot range from the victim. The jury obviously found that testimony to be sufficient to establish the requisite intent to support a conviction of second degree murder. The path of the casing is irrelevant in the face of the eyewitness’ testimony.
Therefore, this assignment is therefore without merit.

Other Crimes Evidence

Davis argues that there is a reasonable possibility that the three instances of prior threats he made to this victim improperly contributed to the verdict. Arguing that the evidence of a threat was introduced, but the nature of the threat was never revealed, he concludes that the inference he threatened to kill the victim, absent proof of the nature of the threat, is sufficient to call the verdict into question.
DThe state argues that the victim’s prior relationship and the prior threats show a history of domestic violence and that the prior acts were proven by clear and convincing evidence.
La. C.E. art. 404 provides in pertinent part:
*768 B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
La. C.E. art. 404 clearly recognizes that other “acts” of a defendant, and not merely convictions, can be admissible under certain circumstances. Admissibility of evidence of these prior acts has been succinctly set forth in State v. Jackson, 625 So.2d 146, 148-49 (La.1993). Admission of this evidence requires that the state: (1) comply with the notice requirements and limiting instructions set out in State v. Prieur, 277 So.2d 126, 130 (La.1973); (2) prove by clear and convincing evidence that the other act occurred and was committed by the defendant; (3) show that the evidence falls within one of the La. C.E. art. 404(B) exceptions to the rule against other crimes evidence and that this exception is relevant to the outcome of the case; and, (4) show that the probative value of the evidence outweighs its potential prejudicial value. State v. Jackson, supra.
17A trial court’s ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326; State v. Blackwell, 30,281 (La.App. 2d Cir.11/10/97), 701 So.2d 1389, writ denied, 97-3073 (La.2/13/98), 709 So.2d 755.
The state complied with State v. Prieur, supra, furnishing defendant with written notice of its intent to offer evidence of this and 15 other incidents and convictions. The trial court ruled that it and 7 others were admissible at trial; however, the state offered evidence regarding only three matters.
Officer Darren Canales testified, without objection, that on February 11, 2003, the victim reported that Davis had called her seven times that day and that during the last phone call he made, he made a threat to her. On cross-examination, the officer testified that Davis denied making any threats.
In its ruling on the admissibility of this incident, the trial court found that it could be admitted to show motive, intent, absence of mistake or accident, and state of mind. He specifically found that its probative value outweighed prejudicial effect.
Although the details of what the victim said Davis would specifically do were not revealed, the word threat is defined in WordPerfect’s dictionary as “a stated intention to inflict injury, damage, or other hostile action on someone.” Merriam-Webster’s on-line dictionary defines the word as “an expression of intention to inflict evil, injury, or damage.” Thus, the word |Rthreat alone connotes an intention, and the trial court was correct to find that it had probative value to show Davis’ state of mind toward this victim. Further, in State v. Mamon, 26,337 (La.App. 2d Cir.12/16/94), 648 So.2d 1347, writ denied, 95-0220 (La.6/2/95), 654 So.2d 1104, this court stated:
Even once such independent relevance is shown, the probative value must outweigh its prejudicial effect. The defendant failed to argue how the admission *769 of the prior crimes evidence prejudiced her. Regardless, considering the striking similarity of the two stabbings occurring only days apart, we find as did the trial court, that the potential prejudice resulting from this evidence does not outweigh its probative value. In addition, any prejudice to defendant was minimized because she had ample opportunity on cross examination to rebut the evidence and impeach the witnesses’ testimony regarding the November 25 stabbing, and was able to explain her alleged actions and present her own version of the facts. For these reasons, we find that the trial court properly allowed the State to introduce this other crimes evidence. This assignment presents no reversible error.
Assuming arguendo that one would conclude that the details of the threat should have been given and it was error for the trial court to allow the admission of this incident, the action is subject to a harmless error review. Under the rationale found in State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, the question becomes whether the verdict rendered was unattributable to this error as dictated in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Chapman standard was later refined in Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), as follows:
Consistent with the jury-trial guarantee, the question [Chapman] instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand.... The inquiry, in other words, is not whether, in a trial that occurred without the error, | na guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.
The court in State v. Maise, 2000-1158 (La.1/15/02), 805 So.2d 1141, stated:
Assuming that the evidence was improperly admitted, we must consider whether the admission of the evidence was unattributable to the verdict. Factors to consider in making this determination include: (1) the importance of the witness’s testimony; (2) the cumulative nature of the testimony; (3) the existence of corroborating or contradictory evidence regarding the major points of the testimony; (4) the extent of cross-examination permitted; and (5) the overall strength of the state’s case.
The record shows that the testimony of the threatening phone call was cumulative. Prior to the testimony regarding the phone calls, the jury heard evidence of two prior incidents between the parties. Officer Dennis Courtney testified that on February 9, 2003, the victim reported that Davis had grabbed her. The officer said he had observed bruises on both of her arms. However, on cross-examination, the officer stated that both parties were arrested as a result of that incident. The summons against the appellant was for simple battery, and the summons against the victim was for aggravated battery.
The jury had also heard evidence of Davis’ 2001 conviction via a guilty plea to aggravated battery upon the victim. The officer who investigated the complaint stated that Davis struck the victim on the head with the butt of a handgun. A certified copy of the minutes showing the conviction was admitted into evidence. The record shows that the defense counsel was not prohibited from cross-examining the officer about the |]nnature of the threat, nor was the state’s case dependent on this evidence to establish motive. There was *770 an eyewitness to this shooting. Davis’ theory of defense of an accidental shooting was dispelled by the neighbor’s testimony that she saw him point and shoot the victim.
This assignment is therefore without merit.

Excessive Sentence

Davis argues that while the life sentence is within the range authorized by the legislature, it is constitutionally excessive since nothing in the record indicates this sentence is necessary to prevent further criminal activity by him.
The state argues there was no justification for this senseless killing of a victim seated unarmed in her vehicle; therefore, the sentence is neither grossly disproportionate nor shocking to the sense of justice.
The sentence for second degree murder is found in La. R.S. 14:30.1(B) which reads:
Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
When a defendant fails to file a La. C. Cr. P. art. 881.1 motion to reconsider sentence, the appellate court’s review is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La.App. 2d Cir.2/25/98), 707 So.2d 164. State v. Raev, 36,847 (La.App. 2d Cir.3/5/03), 839 So.2d 1015, writ denied, 2003-0988 (La.10/10/03), 855 So.2d 330. Constitutional review turns upon whether the sentence is illegal, grossly |1 t disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992); State v. White, 37,815 (La.App. 2d Cir.12/17/03), 862 So.2d 1123.
A review of the record reveals that no motion to reconsider sentence was filed on behalf of this appellant, and thus this court’s review is limited to constitutional review only.
As to the alleged excessiveness of the mandatory prison term, it is within the legislature’s purview to determine the length of the sentence imposed for crimes classified as felonies and the courts are charged with applying those punishments unless they are found to be unconstitutional. State v. Koon, 31,177 (La.App.2d Cir.2/24/99), 730 So.2d 503. The decision to assess mandatory life sentences for certain felonies is within the prerogative of the legislature. Further, the argument that the mandatory life sentence for second degree murder is a violation of the prohibition against excessive punishment in the Louisiana Constitution has been repeatedly rejected. State v. Parker, 416 So.2d 545 (La.1982); State v. Brooks, 350 So.2d 1174 (La.1977); State v. Davis, 31,-711 (La.App. 2d Cir.3/31/99), 732 So.2d 612, writ denied, 99-3114 (La.5/5/00), 761 So.2d 539.
This appellant fails to articulate why his circumstances justify an exception to the imposition of the mandatory sentence. In order to overcome the legislative mandate, there must be clear and convincing evidence that he is exceptional or that, because of unusual circumstances, he is the victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. There are no such unusual circumstances in this Incase, and, on the evidence presented, the mandatory life sentence does not shock the sense of justice. State v. Dorthey, 623 So.2d 1276 (La.1993).
This assignment lacks merit.
*771 CONCLUSION
Based on the reasons explained above, we affirm the defendant’s conviction and sentence.
AFFIRMED.